UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA RAVISCIONI BRUMBAUGH, | No. 1:17-cv-00516-GSA |
| Petitioner, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Respondent. | |

I.      **Introduction**

Plaintiff Donna Raviscioni Brumbaugh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 18, 21 and 22.  Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

II.      **Procedural Background**

On May 14, 2007, the Commissioner denied Plaintiff's application for disability insurance payments under Title II and supplemental security income under Title XVI of the Social Security

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 and 11.

1

Act.  AR 37, 88-95.  Plaintiff retained disability insurance coverage through December 31, 2009.  AR 22.

On May 24, 2013, Plaintiff filed an application for disability insurance benefits alleging disability beginning May 25, 2007.  AR 20.  The Commissioner denied the application initially on October 24, 2013, and upon reconsideration on March 7, 2014.  AR 20.  On March 18, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge.  AR 20.

Administrative Law Judge Vincent Misenti presided over an administrative hearing on January 7, 2016.  AR 42-57.  Plaintiff, represented by counsel, appeared and testified.  AR 42.  An impartial vocational expert Judith Najarian (the "VE") was available by telephone but did not testify.  AR 42.

On February 16, 2016, the ALJ denied Plaintiff's application.  AR 20-36.  The Appeals Council denied review on February 17, 2017.  AR 1-3.  On April 12, 2017, Plaintiff filed a complaint in this Court.  Doc. 1.

### III.     Factual Background

#### A.     Plaintiff's Testimony and Report

Plaintiff (born July 21, 1955) last worked as a correctional officer in 2004.  AR 47-48.  In the course of her testimony she acknowledged that she had been discharged for drawing a cartoon expressing violent themes.[2]  AR 50.  As a result she became depressed and anxious, isolating herself from her friends.  AR 51.

Following the denial of her prior application for disability benefits, Plaintiff was unable to work because of pain in her feet, legs and knees.  AR 48.  Despite wearing special shoes she continued to experience foot pain for twenty minutes three or four times a week.  AR 55-56.  She had begun to forget things and to have mental problems related to depression.  AR 48-49.

#### B.     Medical Records

Plaintiff received primary medical care from Nikki Donaldson, D.O., and support staff at Northwest Medical Group, Fresno, California.  Associated treatment notes and test results are included in the record at AR 459-480, 500-01, 507-13.  Many of the reports are attributable to

---

[2] Plaintiff recreated the drawing and explained its significance to Dr. Kesselman.  *See* AR 343.

treatment occurring after Plaintiff's last insured date of December 31, 2009. When Plaintiff complained of knee pain in July 2008, Dr. Donaldson noted that the pain was "[s]table, controlled with meds." AR 471.

### C. Medical Opinions

#### 1. Psychological Qualified Medical Evaluation (Kesselman)

On June 11, 2007, clinical psychologist Michael S. Kesselman updated his qualified medical evaluation of Plaintiff's workers' compensation claims against her former employer. AR 286-300. Plaintiff had been discharged for a psychiatric disability but had not been granted industrial retirement benefits. AR 286. In related medical claims, Dr. Richard Baker opined that Plaintiff's physical injuries were related to her work but that Plaintiff was physically capable of performing her usual and customary work. AR 286. Plaintiff's social history was largely unchanged since Kesselman's 2005 report with the exception of stress associated with family disagreements concerning her deceased father's estate. AR 287.

Claiming inability to afford treatment without insurance, Plaintiff had not received any mental health treatment since her April 2005 evaluation with Dr. Kesselman. AR 288. Dr. Kesselman opined that Plaintiff was embarrassed to seek mental health treatment. AR 288.

Dr. Kesselman also opined that Plaintiff had mild impairment of activities of daily living, evidenced by difficulty falling asleep and a loss of appetite when she sees someone with whom she formerly worked. AR 288. Plaintiff did not like socializing with others and rarely left home alone. AR 289.

Plaintiff's embarrassment at going out in public led to moderate impairment in social functioning. AR 289. However, Plaintiff had joined a livestock group and begun to make new friends. AR 289. Plaintiff was able to interact satisfactorily with strangers but became irritable and angry at even minor conflict. AR 289.

Based on Plaintiff's reports of difficulty with organization, focus and paying attention, Dr. Kesselman opined that she had mild impairment of concentration, persistence and pace. AR 289. Similarly, because Plaintiff reported becoming easily overwhelmed, anxious, and confused Dr.

///

Kesselman opined that she had moderate impairment resulting in deterioration or decompensation

in complex or work-like settings. AR 290. Dr. Kesselman observed:

> [Plaintiff] is neatly groomed and casually dressed. There are a number of signs which would suggest anxiety and/or depression. She seems tense and on edge. There is a drive-like quality to her behavior and her speech is pressured. Her hands are very warm and sweaty. Although she has been here previously and arrived fifteen minutes early, [Plaintiff] was ten minutes late for the appointment as she became confused and was lost. [Plaintiff] seems somewhat suspicious of the evaluation process. She seems embarrassed and ashamed. When asked about this, she stated she is embarrassed and ashamed and that is the reason she doesn't go out. She seems as if her feelings are hurt and she is too sensitive. Self-esteem seems low. Information is communicated in a clear, coherent manner. There are no signs of psychotic thought process. Intelligence appears within normal limits. Memory function appears within normal limits.

AR 290.

Dr. Kesselman administered a personality test, the Minnesota Multiphasic Personality

Inventory-2 (MMPI-2). AR 290. Results from the clinical scales suggested an angry, depressed

individual who was experiencing strong feelings of inadequacy and uncertainty about the future.

AR 291. Test results indicated that the individual may feel that others have harmed them and

have difficulty trusting others and that he or she may have little energy, be functioning at an

inefficient level, and be tense, irritable and preoccupied with his or her problems. AR 291. In

sum, the profile suggested dysthymic or major affective disorder. AR 291. Antidepressant

medication may be an appropriate treatment. AR 291. To the extent that the individual had

difficulty trusting others, therapy may be difficult at first. AR 291.

Plaintiff's MMPI-2 results included an extremely elevated F scale.[3] AR 290. Dr.

Kesselman opined that an elevated F scale could also result from confusion, exaggerated

symptom checking, or consistently misreading responses on the answer sheet. AR 290. In

addition, Plaintiff's responses at the end of the test were extreme and exaggerated. AR 290.

---

[3] The F scale is a validity scale intended to identify overreporting or "fake bad" responses. www.upress.umn.edu/test-division/mtdda/webdocs/mmpi-2-training-clides/interpretation-of-mmpi-2-validity-scales (accessed January 16, 2019). It is based on 60 infrequently endorsed items included in the first 370 items of the test. *Id.* A high score on the F scale may also reflect random responding, fixed responding, severe psychopathology or severe distress, or unintentional over-reporting. *Id.* A trained test administrator can analyze the test to evaluate why the test produced a high F score. *Id.* The clinical report (AR 344-53) recommended that Plaintiff's test result be interpreted with caution. AR 346.

Dr. Kesselman diagnosed:

Axis I:     300.0     Anxiety disorder not otherwise specified
            311.0     Depressive disorder not otherwise specified

Axis II:    V71.09    No diagnosis on Axis II

Axis III:             Left knee medial and meniscus tears, status post left knee
                      arthroscopy, and secondary mechanical back pain

Axis IV:              Loss of job/inability to work

Axis V:               Global assessment of functioning current 60

AR 293.[4]

Dr. Kesselman recommended psychological treatment:

> [Plaintiff] has not sought any psychological treatment since my last
> appointment. In accordance with ACOEM Guidelines, I continue
> to hold the opinion that [Plaintiff] would benefit from
> psychological/psychiatric treatment. The treatment might include
> patient education, stress management techniques which might
> include relaxation training, behavioral techniques, and cognitive
> techniques, and psychopharmacologic interventions which might
> include antidepressants, sleep medication, and/or anxiolytics.

AR 293.

Dr. Kesselman recommended that workers' compensation coverage provide twenty

sessions of long-term psychotherapy for a period of approximately nine months. AR 293-94. If

needed, further treatment could be provided following a utilization review. AR 293.

Dr. Kesselman evaluated Plaintiff's residual impairment using workers' compensation

work function categories. AR 294-96. He opined that Plaintiff had no impairment on #2 (ability

to perform simple and repetitive tasks) and #7 (ability to make generalizations, evaluations, or

decisions without immediate supervision); very slight to slight impairment on #1 (ability to

comprehend and follow instructions); slight impairment on #3 (ability to maintain a work space

appropriate to a given work load), #4 (ability to perform complex and varied tasks), and #8

(ability to carry out responsibility for direction, control and planning); and slight to moderate

---

[4] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 51-60 corresponds to moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Id.*

impairment on #5 (ability to relate to other people beyond giving and receiving instructions) and #6 (ability to influence people). AR 294-95. Plaintiff would not be able to return to her prior work as a correctional officer. AR 296.

At the close of the report Dr. Kesselman discussed his disagreement with portions of the opinion of psychologist Tara Z. May, Ph.D. AR 296-99. He again addressed his disagreement with Dr. May's report in a supplemental medical-legal evaluation dated September 17, 2007. AR 338-42.

## 2. Psychological Qualified Medical Evaluation (May)

On July 21, 2007, Dr. May provided a supplemental report to Plaintiff's attorney in which she discussed her disagreement with Dr. Kesselman's evaluation. AR 354-60. The doctor began by referring the recipient to her initial comprehensive report dated February 1, 2006, and supplemental report dated May 14, 2006.[5] AR 354.

Dr. May defended her earlier opinion that Plaintiff was appropriately diagnosed with social phobia considering her history of interpersonal avoidance as evidenced by a limited relationship history, dislike of school, difficulty living away from home, preference for graveyard shifts and avoidance of large groups. AR 355. The doctor opined that Plaintiff had a long history of being perceived as odd and angry in social situations and that these personality traits predated her employment as a correctional officer. AR 355.

The doctor reiterated her earlier report that Plaintiff had never sought psychiatric treatment for the alleged psychiatric injury for which she sought worker's compensation benefits. AR 355. No evidence supported the proposition that Plaintiff was psychiatrically unfit for duty in her prior job as a prison guard. AR 355. And, although Dr. May diagnosed Plaintiff with social phobia, it "does not disable her currently and she functions reasonably well despite her interpersonal nature." AR 355.

Dr. May found no evidence supporting Plaintiff's contention that she had been harassed in the workplace. AR 355. In her opinion if Plaintiff's mental disorder was associated with on-the-job harassment it should have subsided following elimination of the stressful situation. AR 355.

---

[5] The earlier reports are not included in the administrative record.

Dr. May opined that removing Plaintiff from duty following discovery of her violent drawing was a reasonable action and not harassment. AR 358.

Dr. May explained that she gave Plaintiff a psychiatric diagnosis despite finding her global assessment of functioning to be 80 because Plaintiff presented information about daily functioning that did not reflect impairment. AR 359. She opined that if Plaintiff returned to work she would show slight impairment in work function categories #5 (ability to relate to other people beyond giving and receiving instructions), #6 (ability to influence people) and #8 (ability to carry out responsibility for direction, control and planning). AR 359.

### 3. Agency Physicians

On October 17, 2013, psychiatrist K.J. Loomis found insufficient evidence of mental impairments between May 25, 2007, and December 31, 2009 (the date last insured). AR 62-63. Accordingly, in the initial application, Dr. Loomis found that Plaintiff was not disabled. AR 64. On reconsideration, Dr. Loomis again determined that Plaintiff had provided insufficient evidence of mental impairment. AR 71.

On February 26, 2014, E. Christian, M.D., found insufficient evidence of any medical impairment between May 25, 2007, and December 31, 2009. AR 80.

### 4. Additional Medical Source Statements

The record includes medical source statements from Plaintiff's primary care physician Nikki Donaldson, D.O.[6] Both statements relate to periods occurring after the date on which Plaintiff was last insured. Dr. Donaldson provided physical and mental medical source statements dated September 2 and November 17, 2015. AR 519-22, 571-72.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

---

[6] The ALJ also noted a medical opinion of podiatrist Roy O. Kroeker, D.P.M., who treated a foot injury and performed a bunionectomy on Plaintiff. AR 31. Although the administrative record includes Dr. Kroeker's treatment notes (AR 524-51), the Court has been unable to identify a medical opinion prepared by Dr. Kroeker. In any event, because Dr. Kroeker treated Plaintiff after her last insured date, any opinion would not relate to the insured period that is in issue here.

legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

///

8

416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI.    Summary of the ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 20-36. The ALJ found that Plaintiff had not worked since the alleged onset date of May 25, 2007 through December 31, 2009, the date on which she was last insured. AR 22. Through the date last insured, Plaintiff had the following serious impairments: affective disorder; status post left knee arthroscopy; partial medial and lateral meniscectomies; medial compartment chondroplasty and debridement; and synovectomy. AR 22. The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; and 404.1526). AR 23.

The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently, to sit six hours and to stand or walk two hours in an eight-hour workday. AR 32. Plaintiff could occasionally climb, kneel, crouch, crawl and stoop. AR 32. She could understand, remember, and carry out simple one- or two-step job instructions but could not tolerate contact with the general public. AR 32. Although Plaintiff was unable to perform any past relevant work, significant numbers of jobs that Plaintiff can perform existed in the national economy. AR 34. Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date of May 25, 2007, through December 31, 2009, the date on which she was last insured. AR 36.

## VII.    Plaintiff's Credibility

Plaintiff contends that the ALJ's credibility finding is flawed because it failed to consider Plaintiff's work history, which Plaintiff characterizes as "strong" and "exemplary." Doc. 18 at 23, 24. The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective testimony concerning her symptoms and work abilities as inconsistent with objective medical records and was not required to consider Plaintiff's work history. Doc. 21 at 18-20. The Court agrees with the Commissioner concerning the inconsistency between Plaintiff's subjective testimony and the objective evidence and concludes that Plaintiff's argument regarding her consistent work record is unpersuasive.

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Accordingly, an ALJ is responsible for determining credibility and resolving conflicts in medical testimony and ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). To determine whether the ALJ's findings are supported by substantial evidence, a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's

///

"medically determinable impairments could reasonably be expected to produce the alleged

symptoms." AR 33. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may

reject the claimant's testimony regarding the severity of his symptoms only if he makes specific

findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15;

*Smolen*, 80 F.3d at 1281. "[T]he ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

1995). *See also* Social Security Ruling ("SSR") 96-7p[7] (stating that an ALJ's decision "must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

the adjudicator gave to the individual's statements and reasons for that weight"). It is not

sufficient for the ALJ to make general findings; he must state which testimony is not credible and

what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th

Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991). If the ALJ's credibility

---

[7] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016); 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to March 28, 2016); 2017 WL 5180304, *2 (Oct. 25, 2017) (further correcting SSR 16-3p). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the force of law," Social Security Rulings "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") In this case, SSR 16-3p became effective after the administrative hearing and issuance of the hearing decision. When a federal court reviews the final decision in a claim, the district court is to apply the rules in effect when the decision was issued by the agency. SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017). Accordingly, Ruling 16-3p does not apply in this case.

finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Acknowledging the possibility that a claimant's symptoms may suggest a greater level of impairment than the objective evidence alone, the ALJ applied SSR 96-7p and considered seven factors relevant to credibility including: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of Plaintiff's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of medication taken to alleviate the pain or other symptoms; (5) treatment other than medication received to alleviate the pain or other symptoms; (6) other measures taken to alleviate the pain or other symptoms; and (7) any other relevant factor. AR 33. The ALJ's analysis was succinct but accurate:

> [T]he claimant appeared to exaggerate answers on the MMPI, which Dr. May found indicative of symptom magnification. However, Dr. Kesselman stated there may be other pathological causes for the scores on the MMPI, but he did not endorse any particular etiology. Nonetheless, the undersigned considered the claimant's reported activities of daily living, treatment, medications, and the effectiveness of medical care in determining the claimant's credibility. As the prior Administrative Law Judge noted, the claimant engaged in a wide variety of daily activities. She tended to her personal needs without assistance, cared for numerous animals, performed household chores, and went out, albeit with someone to accompany her. She appeared to regain good range of motion, strength, and function of her lower left extremity after surgery and subsequent treatment notes were relatively unremarkable and primarily addressed routine illnesses and temporary conditions unrelated to the claimant's alleged disability. As noted, the claimant was medically released to return to work as of July 2004.

Considered with regard to the record as a whole, the Court finds the ALJ's analysis sets forth clear and convincing reasons for the conclusions he reached. Plaintiff does not challenge this portion of the analysis, but instead argues that the ALJ ought to have also considered her exemplary work record.

An ALJ may appropriately consider a claimant's poor work history and frequent, lengthy periods of employment to be evidence of poor credibility. *See Thomas*, 278 F.3d at 959; *Albidrez*

12

*v. Astrue*, 504 F.Supp. 814, 822 (C.D. Cal. 2007). However, claimants' attempts to apply the inverse proposition--that a claimant with consistent work history should be deemed credible-- have generally been unsuccessful. *See Daley v. Berryhill*, 728 Fed.Appx. 691, 693 (9th Cir. 2018). In fact, a claimant's work history may undermine her credibility where, as here, she left his job following a lay-off and did not promptly seek new work. *Bruton v. Massanari*, 268 F. 3d 824, 828 (9th Cir. 2001). In this case, Plaintiff consistently held a job until she was discharged in 2004 for drawing a violent cartoon targeting her superiors. She has not worked since.

In any event, little basis exists to find Plaintiff's prior work history sufficient to outweigh the ALJ's reasoned credibility analysis which Plaintiff does not otherwise challenge. If substantial evidence supports the ALJ's determination, a district court cannot reweigh the evidence simply because an interpretation exists that would have been more favorable to the claimant. *Daley*, 738 Fed.Appx. at 693.

The standard of review limits a district court's discretion on challenges to the ALJ's adverse credibility determinations. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson*, 402 U.S. at 401. Substantial evidence supports the ALJ's determination of Plaintiff's credibility.

**VIII.   Did *Res Judicata* Apply to Plaintiff's 2013 Application?**

Emphasizing that her advancing to an older age category established a change of circumstances, Plaintiff contends that the ALJ erred in finding that her 2007 residual functional capacity determination was *res judicata* in the current action. The Commissioner responds that because Plaintiff failed to prove any additional mental limitations, the ALJ appropriately applied *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), and Social Security Acquiescence Ruling (AR) 97-4(9). The Court agrees that in the absence of proof of increased disability, Plaintiff's increased age alone did not overcome the *Chavez* presumption of continued nondisability.

///

### A. The 2007 Hearing Decision

The 2007 hearing decision addressed Plaintiff's first application for disability insurance benefits filed December 30, 2004. AR 88. Plaintiff's severe impairments were depressive disorder, status post left knee arthroscopy, partial medial and lateral meniscectomies, medial compartment chrondoplasty and debridement and synovectomy. AR 90. After applying the five-step analysis set forth above, ALJ Christopher Larsen determined that Plaintiff was not disabled as defined by the Social Security Act (20 C.F.R. § 404.1520(g)). AR 95. Plaintiff did not appeal this determination, which is now final.

### 1. Findings Concerning Physical Impairments

Following a partial medial meniscectomy, Plaintiff was released to return to work in July 2004. AR 90. In February 2005, consultant Dr. Tahir Hassan diagnosed left knee pain secondary to degenerative joint disease status post arthroscopic surgery, stable gastric ulcer and mental stress (rule out anxiety/depression). AR 91.

In September 2006, workers' compensation medical examiner Dr. Richard Baker examined Plaintiff and diagnosed left knee medial and lateral meniscus tears, medial and lateral compartment osteoarthritis, status post left knee arthroscopy, partial medial and lateral meniscectomies, medial compartment chondroplasty/debridement, synovectomy, and secondary mechanical back pain. AR 91. Dr. Baker opined that Plaintiff was unable to work as a correctional officer but could perform alternate or modified work with restrictions. AR 91.

### 2. Findings Concerning Psychological Impairments

In July 2004, Dr. David Bruce Rose and Dr. Brian Sciaroni determined that Plaintiff was not psychologically fit to return to her job as a county correctional officer. AR 90-91. The doctors found no evidence of psychotic features or suicidal or homicidal ideation, and opined that Plaintiff's speech, mood, affect, intelligence, judgment, memory, ability for abstraction and insight were within normal limits. AR 90. Clinical interviews and psychological testing revealed considerable feelings of anger and sadness. AR 90. Plaintiff was overwhelmed and showed unacceptable risks of poor judgment, poor stress tolerance and impulsive behavior. AR 90-91.

///

In April 2005, agency consultant Dr. Ekram Michiel examined Plaintiff and diagnosed depressed mood and a global assessment of 65.[8] AR 91.

In May 2005, workers' compensation qualified examiner Dr. Michael Kesselman examined Plaintiff and diagnosed anxiety disorder not otherwise specified, adjustment disorder with depression and a GAF of 60.[9] AR 91. Dr. Kesselman opined that Plaintiff was temporarily totally disabled and unable to return to her job. AR 91.

In February 2006, workers' compensation qualified examiner Dr. Tara May diagnosed nonindustrial social phobia, obsessive and paranoid traits and a GAF of 80.[10] AR 91.

### 3.    Physical Residual Functional Capacity

ALJ Larsen found that Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and ten pounds frequently, stand and walk a total of two hours, sit a total of six hours, and occasionally climb, kneel, crouch, crawl and stoop. AR 92. Her testimony about the intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 93. Her daily activities were not as limited as would be expected given her allegations of disabling symptoms and limitations. AR 93. Drs. Hassan and Baker observed that Plaintiff had a normal gait. AR 93.

The ALJ rejected the opinions of the state agency physicians, who had opined that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting, standing and walking six hours in an eight-hour day; occasionally pushing and pulling with her lower left extremity; and occasionally climbing, kneeling, crouching, and crawling. AR 93. The ALJ explained that subsequent medical evidence established that Plaintiff's impairments and resulting limitations were more severe than was apparent when the state agency physicians

---

[8] A GAF between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *Id.* at 34.

[9] A GAF between 51 and 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DSM- IV at 34.

[10] A GAF between 71 and 80 indicates transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after a family argument) or no more than slight impairment in social, occupational or school functioning (e.g., temporarily falling behind in school work). DSM-IV at 34.

prepared their opinions. AR 93. The ALJ also rejected Dr. Hassan's similar opinion of Plaintiff's residual functional capacity, reasoning that Dr. Hassan was unfamiliar with Plaintiff's treatment records and had not treated her over a long period. AR 93. The ALJ found that Dr. Baker's opinion that Plaintiff was precluded from prolonged weight bearing, heavy lifting, squatting, kneeling and repetitive climbing did not preclude her working at the light exertional level. AR 93. Finally, ALJ Larsen found that Dr. Donaldson's statements to the Employment Development Department demonstrated only temporary disability, did not preclude all work activity and did not specify work-related limitations nor medical evidence supporting her opinion. AR 93-94.

#### 4. <u>Mental Residual Functional Capacity</u>

ALJ Larsen found that Plaintiff had mild restrictions of daily living, moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence and pace. AR 94. She could understand, remember and carry out simple one-step job instructions but cannot tolerate contact with the general public. AR 92. Plaintiff had not sought or undergone any mental treatment. AR 93. The ALJ reasoned:

> The state-agency physicians felt [Plaintiff] can understand and remember simple routine one and two-step job tasks and instructions, maintain concentration and attention for two hour increments, sustain an 8-hour day and 40-hour work schedule, relate to and accept direction from supervisors, maintain socially appropriate contact with co-workers and the public, travel, avoid work place hazards, respond to change and set goals independently. Dr. Michiel opined [Plaintiff] can maintain attention and concentration; carry out one- and two-step simple job instructions; relate to and interact with co-workers, supervisors, and the general public; and carry out an extensive variety of technical and/or complex instructions. I give greater weight to these mental restrictions, but I find [Plaintiff] cannot tolerate contact with the general public.

AR 94.

#### 5. <u>Ability to Perform Jobs in the National Economy</u>

If Plaintiff, categorized as a younger individual, could perform the full range of light work, she would not be disabled under Medical-Vocational Rule 202.21. AR 95. Because Plaintiff could not perform the full range of light work, ALJ Larsen relied on the testimony of the vocational expert who opined that an individual of Plaintiff's age, education, work experience and

16

residual functional capacity could perform work in the national economy such as casing splitter (DOT No. 525.687-014, 9800 jobs nationally), BB shot packer (DOT No. 920.685-010, 4800 jobs nationally) and microfilm document preparer (DOT No. 249.587-018, 21,100 jobs nationally). AR 95.

## C.     The 2007 Analysis

Although the Medical Vocational Guidelines control only when the claimant is able to perform the full range of work at one of the regulatory levels of exertion, SSR 85-15 directs the ALJ to the guidelines for the framework of his or her decision when the claimant also has nonexertional limitations.  AR 94.  Accordingly, ALJ Larsen first looked to Medical-Vocational Rule 202.21, which provided that a younger person capable of light work who has graduated high school or more, and whose prior work was skilled or semiskilled with skills that were not transferable, was not disabled.  AR 95.

When the claimant's work capability is further diminished by nonexertional limitations of function or environmental restrictions, an ALJ begins with the result provided by the table, then determines how much further the nonexertional limitations reduce the individual's work capability.  The ALJ must determine the claimant's ability to adjust to different work "considering the interaction of his or her remaining vocational base with his or her age, education, and work experience."  SSR 85-15.  "If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily be found not disabled in the absence of extreme adversities in age, education, and work experience."  *Id.*  In such cases, vocational expert testimony may be helpful.  *Id.*

ALJ Larsen found that Plaintiff was not capable of performing the full range of light work and applied the testimony of a vocational expert to determine that jobs Plaintiff could perform existed in significant numbers in the national economy.   AR 95.

## C.     *Chavez* Presumption of Nondisability

When an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of no disability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly

applied to administrative proceedings than in court. *Chavez,* 844 F.2d at 693; *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling 97–4(9), adopting *Chavez,* applies to cases such as this one involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of non-disability creates a presumption of continuing non-disability in the unadjudicated period. *Lester,* 81 F.3d at 827.

To overcome the presumption of nondisability, a claimant bears the burden of proving changed circumstances indicating a greater disability. *Chavez*, 844 F.2d at 693. "A claimant may rebut the presumption by showing a 'changed circumstance affecting the issue of disability with respect to the unadjudicated period, e.g., a change in the claimant's age category under 20 C.F.R. 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability." AR 97-4(90) at *3.

To determine whether a claimant is disabled, an ALJ must consider a claimant's chronological age, residual functional capacity, education and work experience. 20 C.F.R. § 404.1563(a). He or she may not consider the claimant's "ability to adjust to other work on the basis of . . . age alone." *Id.* Nonetheless, "a change in age status often will be outcome-determinative under the bright-line distinctions drawn by the Medical-Vocational grids." *Chavez*, 844 F.2d at 693. In the absence of new and material evidence establishing good cause to re-open portions of the first ALJ's findings, the principles of *res judicata* render those findings binding. 844 F.2d at 694.

## D. <u>Increased Age Constituted Changed Circumstance</u>

After considering the application of Listings 1.02 (joint dysfunction) and 12.04 (affective disorder) at step three, ALJ Misenti discussed in detail the application of AR 97-4(9). AR 23-32. The ALJ recognized that Plaintiff's increasing chronological age was a change of circumstance since the prior decision. AR 25.

///

At the first alleged onset date (June 25, 2003), Plaintiff (born July 21, 1955) was 48 years old and appropriately categorized as a younger person. 20 C.F.R. § 404.1563(c). Accordingly, when applying the Medical Vocational Guidelines in 2007, ALJ Larsen evaluated Plaintiff as a younger individual capable of light work. AR 94. On July 21, 2005, however, Plaintiff had turned fifty and was appropriately categorized as a person closely approaching advanced age. 20 C.F.R. § 404.1563(d). In applying the Medical Vocational Guidelines to the period beginning May 25, 2007, ALJ Misenti applied the Medical Vocational Guidelines for a person closely approaching advanced age. AR 22; 20 C.F.R. § 404.1563(d).

### D.  Plaintiff Did Not Establish Greater Disability After 2007 Decision

ALJ Misenti began his analysis with Medical Vocational Rule 202.14, which addresses a person capable of light work who is closely approaching advanced age and has graduated high school or more and whose prior work was skilled or semiskilled with skills that were not transferable. AR 35. The rule indicates that such an individual is not disabled. The next step was to determine whether Plaintiff's nonexertional limitations further reduced her work capability.

When a claimant has reached a new age category but has not carried the burden of establishing greater disability, the first ALJ's findings concerning work capacity (i.e., medium, light or sedentary), educational attainment and nature of prior work (i.e., skilled or unskilled) are binding on the subsequent ALJ. *Chavez*, 844 F.2d at 694. In other words, the claimant must show both 'changed circumstances' and 'greater disability.'" *Giancola v. Colvin*, 31 F.Supp.3d 1215, 1221 (E.D. Wash. 2014). *Cf. Vasquez v. Astrue*, 572 F.3d 586, 597-98 (9th Cir. 2009) (where the plaintiff established both a change in the Medical-Vocational age category and a new issue before the prior judge, the presumption of nondisability did not apply); *Lester*, 81 F.3d at 827 (*res judicata* did not apply to a claimant who established an increased age category and a mental impairment not in issue in the prior proceeding).

In the course of his step three analysis, ALJ Misenti found "no compelling reason to conclude that [Plaintiff's] residual functional capacity ha[d] worsened since the prior . . . decision." AR 26. Following an extended discussion of Dr. Kesselman's June 11, 2007, opinion

update, and the results of the MMPI test administered to Plaintiff, ALJ Misenti found that Dr.

Kesselman's opinion of Plaintiff's current psychological symptoms was consistent with the

symptoms articulated in ALJ Larsen's 2007 findings. AR 26-29. In contrast, Dr. May opined

that Plaintiff's situational anxiety and interpersonal discomfort "did not persist in her day to day

functioning" and that Plaintiff's exaggerated responses to the MMPI raised serious questions

concerning Plaintiff's credibility. AR 29. *See also* Section VII above. Acknowledging the

differences in opinion of Drs. Kesselman and May, the ALJ wrote:

> Between these two evaluations, the undersigned finds merit in both
> arguments. At the time of the prior Administrative Law Judge
> decision, the claimant engaged in extensive daily activities and she
> did not seek or require ongoing mental health treatment. My
> review of the evidence suggests the claimant did not require
> specialized treatment, narcotic pain relievers, ongoing
> psychotherapy, or hospitalization for any reason after her knee
> surgery. Considering the vague complaints of limitation and the
> apparent success of the surgery, the undersigned concludes the
> claimant's subjective complaints are not entirely credible to the
> extent alleged. Therefore, the undersigned is inclined to find the
> claimant exaggerated on her testing and is not so limited mentally
> as to preclude all social interaction or simple, unskilled work
> activities.

AR 30.

Noting that medical treatment records for the period between May 2007 and December

31, 2009, indicated that no psychiatric symptoms were then present, ALJ Misenti reviewed the

criteria of Listing 12.04, and Judge Larsen's assessment in the prior decision, before concluding

that Plaintiff failed to establish that her impairments had so worsened between May 2007 and

December 2009 that a deviation from the earlier assessment was warranted. AR 31-32.

In his step four analysis, ALJ Misenti again noted his finding that Plaintiff was not fully

credible and restated Plaintiff's wide variety of daily activities, ability to care for her personal

needs without assistance, care for numerous animals, perform household chores, and go out with

someone to accompany her. AR 33-34. She had regained a good range of motion, strength and

function in her lower left extremity. AR 34. Medical professionals treating her left knee had

released her to return to work in July 2004. AR 34. Agency physicians found insufficient

///

evidence of severe impairments after the 2007 hearing decision and found Plaintiff not disabled under the *Chavez* Acquiescence Ruling (AR 97-4(9)).  AR 34.

The ALJ agreed with the agency physicians' analysis and concluded "that the evidence covering the period from May 25, 2007 through December 31, 2009 was insufficient to show worsening of [Plaintiff's] condition or decreased mental or physical residual capacities." AR 34. Accordingly, ALJ Misenti concluded that under *Chavez*, the principles of *res judicata* rendered the 2007 findings regarding residual functional capacity, education and work experience binding. AR 34.  He also adopted Judge Larsen's vocational findings at steps four and five.

### E.  Vocational Expert Testimony Was Not Required in Second Proceeding

Citing *Tackett*, 180 F.3d at 1102, Plaintiff contends that ALJ Misenti was required to secure the testimony of a vocational expert and therefore erred in adopting the 2007 findings at steps four and five.  Plaintiff's reliance on *Tackett* is misplaced.  In this case, *res judicata* applied to make the prior determination, based on earlier vocational expert testimony, binding in the subsequent proceeding.  In *Tackett*, the ALJ's determination had been based solely on the guidelines and no vocational expert had ever testified concerning the implications of Mr. Tackett's nonexertional impairments.  180 F.3d at 1102.

### F.  Additional Consultative Opinion Not Required

Plaintiff also argues that the ALJ erred in failing to develop the record by ordering a consultative psychological opinion that would review the new evidence to determine whether Plaintiff had established greater disability.  This argument has little merit.

The Commissioner may order a consultative examination at agency expense if the claimant's medical sources cannot, or will not, provide sufficient medical evidence to determine whether the claimant is disabled.  20 C.F.R. § 1517.  However, a consultative examination is not intended to secure an opinion on the ultimate issue of the claimant's disability.  The determination of disability and of findings that are dispositive are reserved to the Commissioner. 20 C.F.R. § 1527(d).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Andrews*, 53 F.3d at 1039; *Magallanes*, 881 ///

F.2d at 750.  He does not require a consultative opinion telling him how to perform his responsibilities.

### G.     Substantial Evidence Supported the Finding that Plaintiff Did Not Establish Greater Disability

A district court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097.  Plaintiff contends that sufficient evidence did not support the ALJ's conclusion that Plaintiff failed to establish greater disability following the 2007 hearing decision.  Her argument is not persuasive.

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.  An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  The Court is not required to accept Plaintiff's characterization of the opinions of Drs. Kesselman and May, particularly when considered in the context of the record as a whole, which included evidence of Plaintiff's daily activities and the absence of any records of psychological treatment of any kind.  Even if this Court were to accept that the record could support Plaintiff's position, the record amply supports the ALJ's interpretation as well.  When the evidence could arguable support two interpretations, the Court may not substitute its judgment for that of the Commissioner.  *Jamerson*, 112 F.3d at 1066.

///

///

///

///

///

///

///

///

VIII.   **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Donna Raviscioni Brumbaugh.

IT IS SO ORDERED.

Dated:   **January 23, 2019**                        **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE